# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 12-26(2) (JRT/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| SHAUN MICHAEL MARTINEZ, | |
| Defendant. | |

Andrew R. Winter and Steven L. Schleicher, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Andrew S. Birrell and Paul C. Dworak, **GASKINS, BENNETT, BIRRELL, SCHUPP, LLP**, 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402, for defendant.

The United States filed a superseding indictment against Defendant Shaun Michael Martinez and other defendants, alleging that Martinez is a member of the Native Mob gang and engaged in a conspiracy to participate in racketeering activity, among other crimes. United States Magistrate Judge Janie S. Mayeron issued a report and recommendation ("R&R") and an order addressing various motions filed by Martinez and other defendants. (Docket Nos. 732, 727.) Martinez has filed objections to the R&R's recommendation that his motions to suppress evidence and statements be denied

and to the order's denial of his motion for severance. (Docket Nos. 782, 744.) The Court will overrule Martinez's objections.[1]

## I. MOTION TO SUPPRESS STATEMENTS

### A. Standard of Review

Martinez moves to suppress evidence stemming from his alleged statements on November 11, 2011, and January 31, 2012. He objects to the Magistrate Judge's recommendation that this motion be denied. Because a motion to suppress is a dispositive matter, the Court must conduct a *de novo* review of this objection. Fed. R. Crim. P. 59(b); *United States v. Bond*, No. 10-CR-117, 2011 WL 2111743, at *1 (E.D. Wis. May 26, 2011).

### B. Factual Background

#### 1. November 11, 2011 statements

Investigator Terry Lee Nutter with the Minnesota Department of Corrections Fugitive Unit of St. Paul, testified that on November 11, 2011, he assisted in the apprehension of Martinez at his apartment in Richfield, Minnesota for a parole violation. (Tr. 115-16.) Nutter transported Martinez to Hennepin County jail in the rear of an

---

[1] Martinez withdrew his motion to suppress jail calls, motion to suppress undercover statements, motion for the suppression of identification evidence, and motion to suppress wire interceptions, electronic surveillance, and other evidence. In addition, Martinez initially moved to suppress a statement he made to law enforcement on July 13, 2004 (mistakenly referred to as a July 13, 2011 statement); the Court will deny this motion as moot based on the United States's representation to the Magistrate Judge that it would not use the statement at trial. These rulings are in accordance with the recommendations of the Magistrate Judge, to which Martinez has filed no objection.

unmarked Chevy Tahoe, which included a cage for transportation. (Tr. 116.) The trip took approximately ten minutes. (*Id.*) Martinez was handcuffed during the trip. (Tr. 126.)

During the transport, Martinez initiated a conversation with Nutter. (Tr. 117.) During this conversation, Martinez made a number of statements regarding his membership and association with the Native Mob and how he was sick of the gang life. (Tr. 117-18.) Martinez was not given *Miranda* warnings prior to making these statements. (Tr. 127.)

Nutter knew Martinez before this conversation because of his work with the Minneapolis Police Department. (Tr. 127-28.) Nutter did not ask Martinez questions and told him that he did not have to talk. (Tr. 117.) Specifically, Nutter did not ask Martinez any questions regarding his criminal conduct. (Tr. 131.) Both Martinez and Nutter were talking during the conversation. (Tr. 127, 131.) The conversation lasted approximately five minutes and was completed when Nutter booked Martinez into jail. (Tr. 118.)

### 2. January 31, 2012 statements

On the morning of January 31, 2012, Nutter and Investigator Jerome Wilhelmy with the Minnesota Department of Corrections arrived at a Minnesota correctional facility in Rush City, where Martinez was incarcerated, to transport Martinez to the St. Paul federal courthouse for an appearance related to the indictment in the instant matter. (Tr. 68.) Before arriving at the courthouse, the officers planned to bring Martinez to the Bureau of Criminal Apprehension ("BCA") office in St. Paul to have

Martinez speak with Minneapolis homicide detectives regarding the homicide of Native Mob member Jeremy Kraskey. (Tr. 68-69, 98.)

When the officers picked up Martinez, they restrained him in handcuffs, a waist chain, and leg irons. (Tr. 100.) They brought him to a garage, where Nutter read him his *Miranda* warnings. (Tr. 70; *see also* United States Exs. 1, 2.) After Nutter read the *Miranda* warnings, Martinez indicated that he understood his rights and agreed to give a statement. (Tr. 121.) The officers taped a recorder under a seat in their police vehicle, attempting to record any conversation that occurred without Martinez being aware of the recording, but only a portion of the *Miranda* warnings and none of the rest of the conversation was successfully recorded. (Tr. 69-70, 72, 108, 120.)[2]

Martinez has previously been exposed to *Miranda* warnings. He had been read these warnings twice in 1996, once in 1997, and once in 1998. (Tr. 67.) Martinez spoke to the police in 1996 and 1997, but in 1998, Martinez requested a lawyer and did not speak to the police. (Tr. 67-68.)

The drive between Rush City and the BCA office took approximately forty-five to fifty minutes. (Tr. 73.) Martinez thought that he was going to federal court because of an indictment, and Wilhelmy confirmed to Martinez that he had been indicted federally for racketeering. (Tr. 74, 101-102.) The officers told Martinez during the drive that he was going to be speaking to some people and to keep his mind open, and that some of the things that he would hear were going to shock him and upset him. (Tr. 73, 103-04, 122.)

---

[2] Wilhelmy and Nutter speculated that further recording of their conversation did not occur because, during the transport, the recorder flipped so that the recording side ended up against the back seat. (Tr. 72, 108.)

The officers did not specifically tell Martinez that he would be speaking to homicide detectives. (Tr. 73.) Martinez did not originally realize that they would be stopping by the BCA office on the way to federal court. (*See* Tr. 100-01.) Then, approximately ten to fifteen minutes before reaching the BCA office, Nutter told Martinez that they would be stopping at the BCA office. (Tr. 103.)

During his conversation with Wilhelmy and Nutter, Martinez did not appear intoxicated, was respectful, appeared nervous but not overly hyper, answered questions appropriately, and appeared to be of average intelligence and to understand what was occurring. (Tr. 73-75.) The officers made no threats to Martinez during the transport. (Tr. 76.) Wilhelmy stated that, based on his previous contacts with Martinez, he had a cordial and friendly relationship with him. (Tr. 97.) Martinez did not ask for any food, water, medical assistance, or "anything physical" during the transport. (Tr. 77.) Martinez also did not ask for an attorney. (*Id.*)

When the officers and Martinez arrived in the parking garage of the BCA office, the officers let Martinez out of the truck, and Martinez asked for a cigarette. (*Id.*) The officers got Martinez a cigarette and let him have it while he was in the garage. (*Id.*) The officers did not talk to Martinez during the smoke, except to engage in small talk. (Tr. 106.) Martinez made no incriminating statements in the garage. (Tr. 107.) Martinez was visibly upset while he was smoking; he started tearing up, his eyes were red, and he was sniffling. (Tr. 122-23.)

When Martinez was done smoking the cigarette, he was escorted into a BCA office approximately thirty feet from where the police vehicle had parked and he was

introduced to the homicide investigators. (Tr. 77-78.) Specifically, Martinez was introduced to BCA Special Agent Rogers and Detectives Christopher Gaiters and Bob Dale from the Minneapolis Police Department. (Tr. 104.) Nutter notified these officers that Martinez had been advised of his *Miranda* rights. (Tr. 123.)

Wilhelmy and Nutter watched the interview of Martinez in a separate room through a video feed. (Tr. 79, 124.) During breaks in questioning, Wilhelmy talked to Martinez. (Tr. 79.) Wilhelmy stated that Martinez did not appear to be intoxicated and that no promises or threats were made to him. (*Id.*) Nutter spoke with Martinez at points during the interview, as well. (Tr. 124.) Nutter noted that Martinez appeared calm at the beginning of the interview, but as the interview continued he became visibly nervous and was shaking, fidgeting, and visibly crying and sniffling. (Tr. 125-26.)

Gaiters, a sergeant and homicide investigator who was one of the interviewers at the BCA office, testified that he did not give Martinez a *Miranda* warning prior to questioning because he had been told by another officer that it had already been given to him. (Tr. 136-37.) Without providing another *Miranda* warning, then, Sergeant Gaiters proceeded to ask Martinez questions about the Kraskey homicide. (Tr. 137.)

Gaiter described Martinez's demeanor during the interview as somewhat calm, clear, cooperative, and very intellectual. (*Id.*) Martinez did not exhibit any signs of being intoxicated either through alcohol or controlled substances. (*Id.*) Martinez appeared to understand the officer's questions, he was aware of his surroundings, he responded appropriately to questioning, and he exhibited no confusion. (Tr. 137-38.) Gaiters testified that he did not threaten Martinez or promise him anything to keep him

talking. (Tr. 138.) The officers allowed Martinez to use the restroom, drink coffee, and have cigarettes and any other food or drink that he requested during the interview. (Tr. 138-39.)

Martinez asked for an attorney at the end of the three-and-a-half hour interview. (Tr. 79-80.) Once Martinez made reference to an attorney, the substantive questioning in the interview ended. (Tr. 124, 139-40; United States Ex. 4 at 189-97.)

C. Analysis

1. November 11, 2011 statements

Martinez argues that the Court should suppress the statements he made to Nutter on November 11, 2011, because they were result of a custodial interrogation made without *Miranda* warnings. A person in police custody must receive *Miranda* warnings before being subject to interrogation. *United States v. Head*, 407 F.3d 925, 928 (8th Cir. 2005). To determine whether an officer's conduct amounts to interrogation, the standard is whether the officer engaged in express questioning or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980). This standard incorporates officers' words or actions, other than those normally incident to custody, which they should know are reasonably likely to result in an incriminating response. *Id.* When a suspect in custody makes spontaneous statements to an officer, no interrogation can be imputed to the officer. *United States v. Hayes*, 120 F.3d 739, 744 (8th Cir. 1997) ("*Miranda* does not protect an accused from a spontaneous admission made under circumstances not induced by the investigating officers or during a conversation not initiated by the officers.")

(internal quotation marks omitted). Similarly, an officer need not give *Miranda* warnings prior to engaging in polite conversation with a suspect, as long as there is no interrogation. *See, e.g.*, *United States v. Tail*, 459 F.3d 854, 858 (8th Cir. 2006) ("Polite conversation is not the functional equivalent of interrogation.").

Here, Nutter testified that Martinez initiated the conversation with him, he never asked Martinez any questions, and he told Martinez that he did not need to talk. The Court thus concludes that Martinez's statements were voluntary, and not the product of an interrogation or its functional equivalent, and that there was no *Miranda* violation. Accordingly, the Court will deny Martinez's motion to suppress his November 11, 2011, statements.

### 2. January 31, 2012 statements

Martinez next argues that he did not receive a *Miranda* warning[3] when he arrived at the BCA office and, therefore, the Court should suppress the statements he made there. Because Nutter provided *Miranda* warnings before Martinez's transport to the BCA and Martinez said he was willing to speak, the Court must determine whether this waiver was knowing, intelligent, and voluntary as to the statements Martinez made at the BCA office.

There are two distinct aspects of determining whether a *Miranda* waiver is voluntary, knowing, and intelligent. First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011)

---

[3] The Court finds that Nutter gave Martinez a *Miranda* warning shortly after he arrested Martinez on January 31.

(internal quotation marks omitted). The second aspect of Miranda inquiry is whether the defendant knowingly and intelligently waived his rights, *id.*, meaning the defendant had "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it[,]" *United States v. Turner*, 157 F.3d 552, 555 (8th Cir. 1998) (quoting *United States v. Jones*, 23 F.3d 1307, 1313 (8th Cir. 1994)). This second prong does not require police coercion. *Id.* The United States has the burden to establish, by a preponderance of the evidence, that a *Miranda* waiver was valid. *United States v. Boslau*, 632 F.3d 422, 429 (8th Cir. 2011).

Here, the United States has established the first element of the *Miranda* waiver. Martinez has made no allegations of police behavior that would rise to the level of coercion, such as the use of threats or violence or the use of direct or indirect promises that would overcome a defendant's free will and capacity for self-determination. *See Sheets v. Butera*, 389 F.3d 772, 778-79 (8th Cir. 2004). The fact that Martinez did not originally know that the officers would bring him to the BCA office for an interview related to a homicide did not constitute coercion that rendered Martinez's waiver involuntary. *See Colorado v. Spring*, 479 U.S. 564, 574-75 (1987); *United States v. Syslo*, 303 F.3d 860, 865-66 (8th Cir. 2002); *United States v. Andaverde*, 64 F.3d 1305, 1312-13 (9th Cir. 1995).

The United States has also established the second aspect of *Miranda* waiver, that Martinez knowingly and intelligently waived his rights. Martinez argues, in essence, that he did not have a full awareness of the nature of the right he abandoned and the consequences of this decision because he did not know, at the time of his *Miranda*

waiver, with whom he would be speaking or the topics they would discuss. The Court finds otherwise because there was sufficient interconnectedness between the *Miranda* warnings given to Martinez and Martinez's interrogation at the BCA office.

As a preliminary matter, the amount of time between the *Miranda* warning and the BCA interrogation did not invalidate the waiver. An interval of time of forty-five to fifty minutes between *Miranda* warnings and questioning is insufficient, in and of itself, to invalidate a waiver. *See United States v. Nguyen*, 608 F.3d 368, 374-75 (8th Cir. 2010); *see also United States v. Boyd*, 180 F.3d 967, 977 (8th Cir. 1999). Furthermore, the fact that Martinez was not aware of all of the subjects on which he would be questioned at the BCA office did not make his original waiver unknowing or unintelligent. Officers are not required to inform defendants of each subject on which they might be questioned because the Constitution "does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring*, 479 U.S. at 574.[4] Finally, the mere presence of a new interrogator or a new location does require the re-advisement of *Miranda* rights, as long there is a sufficient connection between the *Miranda* waiver and the new interrogation such that a defendant "must have known that his rights had not materially changed[.]" *Andaverde*, 64 F.3d at 1312-13.

Considering the totality of the circumstances here, the Court finds that re-advisement of Martinez's *Miranda* warnings was unnecessary because there was sufficient interconnectedness between the warnings and the interrogation. *See Wyrick v.*

---

[4] Here, Martinez knew that he had been federally indicted in connection with the Native Mob. It was thus logical that he could be questioned about homicides and other activities with which the Native Mob was associated.

*Fields*, 459 U.S. 42, 48-49 (1982). Wilhelmy and Nutter informed Martinez of his rights, told him that other people were about to question him on subjects that might upset him, eventually told him that they were taking him to the BCA office, and were present at the BCA office, including in the interrogation room at times, during the questioning. Under these circumstances, there was a sufficient connection between the *Miranda* warnings given to Martinez and his interrogation such that Martinez must have been aware that his rights had not changed from the time when he was in the police vehicle to when he reached the BCA office. Furthermore, Martinez knew that he was indicted on federal charges related to the Native Mob and had previously been read his *Miranda* rights on at least four occasions, further discrediting his claim that he did not knowingly and intelligently waive his rights to be interrogated about alleged Native Mob activities like the Kraskey homicide. *See Vinton*, 631 F.3d at 483 (considering a defendant's previous interactions with law enforcement when deciding that defendant waived his *Miranda* rights). Accordingly, the Court will deny Martinez's motion to suppress his statements.

## II. MOTION TO SUPPRESS EVIDENCE

### A. Standard of Review

Martinez next moves to suppress evidence stemming from search warrants for his home executed on July 13, 2011. He objects to the Magistrate Judge's recommendation that the Court deny this motion. As above, because a motion to suppress is a dispositive matter, the Court must conduct a *de novo* review of this objection.

### B. Analysis

Martinez lodges a general objection that the Court must suppress evidence obtained from the July 13 search of his residence based on the four corners of the search warrant and application. A search warrant must be based upon a finding that there is probable cause to believe that evidence of a crime will be found in the place searched. *See United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007). Probable cause exists if a reasonable person could conclude that there is a "fair probability" that the object of the search warrant may be found in the place searched. *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances, and resolution of the question by an issuing judge 'should be paid great deference by reviewing courts.'" *United States v. Grant*, 490 F.3d 627, 631 (8th Cir. 2007) (quoting *Gates*, 462 U.S. at 236).

The Court finds that a reasonable person could have concluded that there was a "fair probability" that evidence of a crime would be found at Martinez's apartment, XXXX Cedar Avenue South. The R&R described the warrant and the supportive application for the search of XXXX Cedar Avenue South in detail. (*See* R&R at 42-44.) The application for the warrant described Martinez's involvement with the Native Mob gang, complaints of heavy foot traffic and marijuana odor coming from Martinez's apartment, a dog sniff that alerted officers to the presence of narcotics in the apartment, and evidence expected to be found related to drug dealing in the apartment. (*Id.*) Given these facts, the Court finds that there was a "fair probability" that evidence of narcotics

and gang activity would be found in Martinez's apartment. The Court will, therefore, deny Martinez's motion to suppress evidence obtained as a result of the search.

## III. MOTION FOR SEVERANCE

### A. Standard of Review

Finally, Martinez moves to sever his trial from the other defendants' trials. Martinez objects to the Magistrate Judge's order denying this motion. A district court's review of a magistrate judge's order on a nondispositive matter is "extremely deferential." *Roble v. Celestica Corp.*, 627 F. Supp. 2d 1008, 1014 (D. Minn. 2007); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980).

Citing no authority, Martinez objects that a motion for severance is a dispositive motion and therefore the Magistrate Judge's entry of an order on this issue was in error. *See* D. Minn. L.R. 72.2. A "nondispositive matter" is defined as a pretrial matter "not dispositive of a claim or defense[.]" *Id.* 72.2(a). The Court finds that Martinez's motion for severance was a nondispositive motion because it is not dispositive of a claim or defense but would merely generate a separate trial on the same allegations and evidence. *See United States v. Ortiz*, No. 08-CR-231, 2011 WL 1344213, at *1 (E.D. Wis. Apr. 8, 2011) (holding that a "motion to sever is a nondispositive pretrial motion"); *United States v. Potter*, No. 3:09-CR-138, 2010 WL 2776327, at *1 (E.D. Tenn. July 14, 2010) (same).

The Court will reverse such an order only if it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a); D. Minn. LR 72.2(a).[5]

### B. Analysis

Martinez objects that it was an error to deny his motion for severance because of "*Bruton* issues, spillover effect, jury confusion, and antagonistic defenses" that will prejudice him and deny him a fair trial and because "[t]his prejudice has grown orders of magnitude by the superseding indictment." (Def.'s Objection at 1, Aug. 20, 2012, Docket No. 744.)

Under Federal Rule of Criminal Procedure 8(b), defendants are properly joined "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." "Generally, the 'same series of acts or transactions' means acts or transactions that are pursuant to a common plan or a common scheme." *United States v. Wadena*, 152 F.3d 831, 848 (8th Cir. 1998). "[I]t is a well settled rule in [the Eighth C]ircuit that the propriety of joinder must appear on the face of the indictment." *United States v. Bledsoe*, 674 F.2d 647, 655 (8th Cir. 1982). "Rule 8(b) requires that there be some common activity involving all of the defendants which embraces all the charged offenses even though every defendant need not have participated in or be charged with each offense." *Id.* at 656. Courts must liberally construe Rule 8(b). *Id.* at 655.

---

[5] The Court's conclusion on the motion to sever would be the same even if it had reviewed this motion *de novo*.

The Court finds that the requirements of Rule 8(b) are met in this case. Martinez is charged, along with his co-defendants, with knowing participation in an unlawful RICO conspiracy. In Count 2, the defendants are charged with a conspiracy to use and carry firearms during and in relation to a crime of violence. The remaining counts involve acts that were allegedly committed in furtherance of or in conjunction with the RICO conspiracy. Because the superseding indictment alleges that the acts taken by all defendants were acts in furtherance of a RICO conspiracy, the Court concludes that all of the accused criminal conduct stems from "the same series of acts or transactions, constituting an offense" under Rule 8(b).[6]

Federal Rule of Criminal Procedure 14 also applies to motions for severance. This Rule permits the Court, in its discretion, to sever otherwise properly joined defendants or offenses where a joint trial may result in prejudice to one of the defendants. Fed. R. Crim. P. 14(a). There is a preference for joint trials and less drastic measures than severance may suffice to alleviate the risk of prejudice. *Zafiro v. United States*, 506 U.S. 534, 537-39 (1993); *see also United States v. Flores*, 362 F.3d 1030, 1039 (8th Cir. 2004). To grant a motion for severance, "the necessary prejudice must be severe or compelling." *United States v. Pherigo*, 327 F.3d 690, 693 (8th Cir. 2003) (internal quotation marks

---

[6] *See United States v. Gravatt*, 280 F.3d 1189, 1191 (8th Cir. 2002) ("Persons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together, even if each defendant did not participate in or was not charged with each offense."); *United States v. Houston*, 892 F.2d 696, 703 (8th Cir. 1989) ("[T]he initial joinder of the defendants was proper pursuant to [Rule] 8(b) because the indictment charged all of the defendants with participation in a single conspiracy and charged several of the defendants with various substantive counts arising from the same conspiracy." (footnote omitted)); *see also United States v. Darden*, 70 F.3d 1507, 1527 (8th Cir. 1995) ("Each defendant may be held accountable for actions taken by other defendants in furtherance of the [RICO] conspiracy[.]").

omitted). Prejudice is severe where the jury is incapable of compartmentalizing the evidence or the defendants' defenses are irreconcilable. *United States v. Frank*, 354 F.3d 910, 920 (8th Cir. 2004). In determining the jury's ability to compartmentalize the evidence, courts consider the complexity of the case and the adequacy of admonitions and instructions of the trial judge. *Pherigo*, 327 F.3d at 693. Generally, "[p]ersons charged in a conspiracy or jointly indicted on similar evidence from the same or related events should be tried together, even if each defendant did not participate in or was not charged with each offense." *United States v. Gravatt*, 280 F.3d 1189, 1191 (8th Cir. 2002). Furthermore, "a court must weigh the inconvenience and expense of separate trials against the prejudice resulting from a joint trial of codefendants." *Pherigo*, 327 F.3d at 693.

Martinez argues that he will be prejudiced by being associated with his co-defendants, particularly because certain counts – including crimes of violence – do not specifically involve him. Martinez has not identified evidence that the United States may introduce that will prejudice his trial, however. *See United States v. Garrett*, 961 F.2d 743, 746 (8th Cir. 1992) (holding that a defendant "must make a showing of real prejudice by demonstrating that the jury was unable to compartmentalize the evidence") (internal quotation marks omitted). The Court finds Martinez's general concerns about the entry of evidence of the Native Mob's activities and crimes of violence to be an insufficient basis to sever the trial. This is particularly true because Martinez himself is charged with premeditated murder (including charges of murder in aid of racketeering and witness tampering by murder), assault with a dangerous weapon in aid of racketeering, the use

and carrying of a firearm during and in relation to a crime of violence, and tampering with a witness (involving intimidating and threatening a witness), among other crimes. Martinez's allegation that he will somehow be prejudiced by being associated with allegedly violent co-defendants is not a sufficient basis to sever the trial in light of the crimes that he is personally alleged to have committed.

Martinez further argues that the case is complex, which could confuse the jury. However, the Court finds that the jury is unlikely to be confused and that "justice is best served by trying the members of [this] racketeering enterprise together because a joint trial gives the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." *See United States v. Darden*, 70 F.3d 1507, 1527-28 (8th Cir. 1995) (internal quotation marks omitted).

Martinez also alleges that his rights under *Bruton v. United States*, 391 U.S. 123 (1968),[7] will be violated if his motion for severance is not granted. However, Martinez has not identified any statements that would violate *Bruton* or otherwise be inadmissible against him. Accordingly, the Court finds these arguments to be insufficient grounds on which to grant the motion for severance. Of course, Martinez may object at trial to evidence that he deems unduly prejudicial or otherwise inadmissible.

Finally, the Court has weighed the inconvenience of having separate trials. This case involves a long history of many acts allegedly committed by members of the Native Mob. Having a joint trial under these circumstances "save[s] time and money for the

---

[7] In *Bruton*, the Supreme Court held that the admission of statements from a nontestifying defendant that inculpated a co-defendant violated the latter's Confrontation Clause rights, despite a curative instruction otherwise. 391 U.S. at 135-36.

courts, prosecutors, and witnesses." *See Darden*, 70 F.3d at 1527. This factor thus weighs in favor of denying the motion for severance. Considering the factors discussed above and the evidence presented, the Court will overrule Martinez's objections to the denial of his motion for severance.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Objections [Docket No. 744, 782] are **OVERRULED**.

2. The Magistrate Judge's Order [Docket No. 727] is **AFFIRMED**.

3. The Report and Recommendation of the Magistrate Judge [Docket No. 732] is **ADOPTED**.

4. Defendant's Motion for Suppression of Identification Evidence [Docket No. 335] is **WITHDRAWN**.

5. Defendant's Motion to Suppress Statements [Docket No. 336] is **DENIED** as follows:

    a. Defendant's Motion to Suppress Jail Calls is **WITHDRAWN**;

    b. Defendant's Motion to Suppress Undercover Statements is **WITHDRAWN**;

    c. Defendant's Motion to Suppress his July 13, 2004, Statement is **DENIED as moot**; and

d. Defendant's Motion to Suppress Statements made on November 11, 2011, and January 31, 2012, is **DENIED**.

6. Defendant's Motion to Suppress Wire Interceptions, Electronic Surveillance, and Other Evidence [Docket No. 337] is **WITHDRAWN**.

7. Defendant's Motion for Suppression of Evidence Obtained by Search and Seizure [Docket No. 338] is **DENIED**.

DATED: December 12, 2012          _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                     JOHN R. TUNHEIM
                                                            United States District Judge